The opinion of the Court was delivered by
Johnson, J.
That a plaintiff must recover upon the strength of his own title, and not the weakness of his adversary’s, is a rule which, I believe, admits of no exception, and it is, I think, equally clear, that the naked possession of a personal chattel is prima facie evidence of property, and good against all the world, except the rightful owner. Phillips, 118-19.[1]
The defendant’s wife, and after their marriage, the defendant himself, had the possession of Joe, with the consent, and under a bill of sale from Harville, who was the acknowledged owner, and whether fraudulent or not, is not a matter of any consequence as regards the fact of possession. It gave him the right to *hold until some one claiming by a title r*ono paramount should claim the possession, and consequently a right *- t-o retake if he was divested by any other means. And this leads to an inquiry as to the legality of the title set up by the plaintiff on the trial below.
In considering this question, I will begin by noticing the sheriff’s receipt for the money bid by the plaintiff for the negro, Joe, at a supposed sale. This, it is insisted, is prima facie evidence of the authority of the sheriff to sell, and put the opposite party to the proof of the negative. This question is, I think, conclusively settled by this Court, in the case of Barkley v. Scrivin, 1 Nott & McCord, 408, in which it was determined, that although it was not necessary to produce all the executions intervening between the judgment and that under which the sale was made, the latter was indispensable, as the authority under which the sheriff acted, and that the judgment on which it was founded, ought also to be introduced. It is true, that in that case, lands were the subject of litigation, but I am unable to see any reason why the rule will not equally apply to personal estate. If it were otherwise, the whole property of the community would be at the mercy of a sheriff. This process runs through the whole State, and to compel a party to search and procure certificates from the office of the clerk of every district in the State, would be unreasonable; whereas, if he w'ho sets it up, is required to produce it, the execution under which he purchases points directly to the office where it is to be found. This argument must therefore fail.
*554 The next question arises out of the admissibility of the exemplifications so far as they profess only to give extracts of the proceedings in relation to the second and third executions, under the latter of which the levy and sale is alleged to have been made. This inquiry is wholly superseded, if the memorandum endorsed on the first execution of the receipt of two sums amounting to $110, when only $95 was due, is not susceptible of ^RflRl explanati°n j for, if that is to be ^regarded as evidence, the exe-0 cution was more than satisfied, but as it has not been noticed in the argument, it may become necessary to consider the ground taken.
At common law, the copy of a paper writing could not be given ill evidence when the original was in existence, and in the power of the party; but the Act of the Legislature of 1121, P. L. Ill, 1 Brev. Dig. 315,[1] authorizes attested copies of all records, certified by the clerks of the Courts, to be given in evidence. When an Act of the Legislature is in abrogation of the common law, it is to be strictly construed, and even without the aid of this rule, it appears to me obvious that the Legislature never intended by the term copies, to make extracts evidence; the terms themselves are of different import, and besides the mischiefs of confounding them appear to me too manifest to need exposure. A party is not presumed-nor is he bound to ¡know what evidence his adversary will adduce against him; and if he be permitted to extract from a record only so much as he may deem necessary to his own side of the question, and to give it in as evidence, he will always take care to leave out that which makes against him. By the same rule, the opposite party would have the same right to 'extract so much as was subservient to his side of the question, which, from the specimen of extracting furnished by this case, would produce inexplicable difficulties. Thus, in this case, we find that on the first fi.fa., when only $95 was due, $110 had been paid, and yet an alias issued, and also a pluries ; and, as if to force conviction upon me of the necessity of a literal copy, the extract represents the pluries to have been entered in the sheriff's office on the 19th March, 1808, and the alias, which must necessarily precede it, as having been entered on the 2d July, 1808, nearly four months after.
But it has been argued, that these extracts were admissible as prima facie evidence of the existence of such judgments and executions. I confess I do not understand how this sort of evidence can apply to a *R(H1 case> w^en the court sees from the evidence produced, *that better -I and more ample proof of the fact does exist, and is in the power of the party, and appears to me to be at war with that universal rule, that the best evidence should always be adduced, and can only apply when there is no higher evidence.
I think, therefore, these abstracts were inadmissible, and if admitted, they proved nothing, and the motion ought to be granted.
Nott and HugéR, JJ., concurred.

 7 Stat. 176, § 39; Post. 472; see 3 Stat. 179, 704; Trott’s Laws, 437, 450, 380; 1 MoM. 134.